IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RICHARD ROEGNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION |
| vs. | ) | |
| | ) | Case No. |
| GREENRIDGE COMMONS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**COMPLAINT**

COMES NOW, RICHARD ROEGNER, by and through the undersigned counsel, and files this, his Complaint against Defendant, GREENRIDGE COMMONS, INC., pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* ("ADA") and the ADA's Accessibility Guidelines, 28 C.F.R. Part 36 ("ADAAG"). In support thereof, Plaintiff respectfully shows this Court as follows:

**JURISDICTION**

1. This Court has original jurisdiction over the action pursuant to 28 U.S.C. §§ 1331 and 1343 for Plaintiff's claims pursuant to 42 U.S.C. § 12181 *et seq.*, based upon Defendant's failure to remove physical barriers to access and violations of Title III of the ADA.

**PARTIES**

2. Plaintiff, RICHARD ROEGNER (hereinafter "Plaintiff") is, and has been at all times relevant to the instant matter, a natural person residing in Houston, Texas (Harris County).

3. Plaintiff is disabled as defined by the ADA.

4. Plaintiff is required to traverse in a wheelchair and is substantially limited in performing one or more major life activities, including but not limited to: walking and standing.

5. Plaintiff uses a wheelchair for mobility purposes.

6. Plaintiff is also an independent advocate of the rights of similarly situated disabled persons and is a "tester" for the purpose of enforcing Plaintiff's civil rights, monitoring, determining and ensuring whether places of public accommodation are in compliance with the ADA. His motivation to return to a location, in part, stems from a desire to utilize ADA litigation to make Plaintiff's community more accessible for Plaintiff and others; and pledges to do whatever is necessary to create the requisite standing to confer jurisdiction upon this Court so an injunction can be issued correcting the numerous ADA violations on this property, including returning to the Property within six months after it is accessible ("Advocacy Purposes").

7. Defendant, GREENRIDGE COMMONS, INC. (hereinafter "GREENRIDGE COMMONS, INC."), is a Texas company that transacts business in the State of Texas and within this judicial district.

8. Defendant, GREENRIDGE COMMONS, INC., may be properly served with process for service via its Registered Agent, to wit: c/o Malachite Group of Texas, Inc., Registered Agent, 1955 W TC Jester Boulevard, Houston, TX 77008.

**FACTUAL ALLEGATIONS**

9. On or about January 30, 2021, Plaintiff was a customer at "Wak Mart" a business located at 11495 North Freeway, Houston, TX 77060, referenced herein as "Wak Mart". Attached is a receipt documenting Plaintiff's purchase. *See* Exhibit 1. Also attached is a photograph documenting Plaintiff's visit to the Property. *See* Exhibit 2.

10. Defendant, GREENRIDGE COMMONS, INC., is the owner or co-owner of the real property and improvements that Wak Mart is situated upon and that is the subject of this action, referenced herein as the "Property."

11. Plaintiff lives 6 miles from the Property.

12. Plaintiff's access to the business(es) located 11495 North Freeway, Houston, TX 77060, Harris County Property Appraiser's property identification number 1094670000008 ("the Property"), and/or full and equal enjoyment of the goods, services, foods, drinks, facilities, privileges, advantages and/or accommodations offered therein were denied and/or limited because of his disabilities, and he will be denied and/or limited in the future unless and until Defendant, GREENRIDGE COMMONS, INC., is compelled to remove the physical barriers to access and correct the ADA violations that exist at the Property, including those set forth in this Complaint.

13. Defendant, GREENRIDGE COMMONS, INC., as property owner, is responsible for complying with the ADA for both the exterior portions and interior portions of the Property. Even if there is a lease between Defendant, GREENRIDGE COMMONS, INC. and the tenant allocating responsibilities for ADA compliance within the unit the tenant operates, that lease is only between the property owner and the tenant and does not abrogate the Defendant's independent requirement to comply with the ADA for the entire Property it owns, including the interior portions of the Property which are public accommodations. *See* 28 CFR § 36.201(b).

14. Plaintiff has visited the Property at least once before as a customer and advocate for the disabled. Plaintiff intends on revisiting the Property within six months after the barriers to access detailed in this Complaint are removed and the Property is accessible again. The purpose of the revisit is to be a return customer, to determine if and when the Property is made accessible and to maintain standing for this lawsuit for Advocacy Purposes.

15. Plaintiff intends on revisiting the Property to purchase goods and/or services as a return customer living in the near vicinity as well as for Advocacy Purposes, but does not intend

to re-expose himself to the ongoing barriers to access and engage in a futile gesture of visiting the public accommodation known to Plaintiff to have numerous and continuing barriers to access.

16. Plaintiff travelled to the Property as a customer and as an independent advocate for the disabled, encountered the barriers to access the Property that are detailed in this Complaint, engaged those barriers, suffered legal harm and legal injury, and will continue to suffer such harm and injury as a result of the illegal barriers to access present at the Property.

**COUNT I**
**VIOLATIONS OF THE ADA AND ADAAG**

17. On July 26, 1990, Congress enacted the Americans with Disabilities Act 42 U.S.C. § 12101 *et seq*.

18. Congress found, among other things, that:

(i) some 43,000,000 Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole is growing older;

(ii) historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;

(iii) discrimination against individuals with disabilities persists in such critical areas as employment, housing public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services;

(iv) individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser service, programs, activities, benefits, jobs, or other opportunities; and

(v) the continuing existence of unfair and unnecessary discrimination and

> prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and non-productivity.

42 U.S.C. § 12101(a)(1) - (3), (5) and (9).

19. Congress explicitly stated that the purpose of the ADA was to:

(i) provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

(ii) provide a clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and

* * * * *

(iv) invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 U.S.C. § 12101(b)(1)(2) and (4).

20. The congressional legislation provided places of public accommodation one and a half years from the enactment of the ADA to implement its requirements.

21. The effective date of Title III of the ADA was January 26, 1992 (or January 26, 1993 if a defendant has 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 12181; 28 C.F.R. § 36.508(a).

22. The Property is a public accommodation and service establishment.

23. Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the Department of Justice and Office of Attorney General promulgated federal regulations to implement the requirements of the ADA. 28 C.F.R. Part 36.

24. Public accommodations were required to conform to these regulations by January 26, 1992 (or by January 26, 1993 if a defendant has 10 or fewer employees and gross receipts of

$500,000 or less). 42 U.S.C. § 12181 *et seq*.; 28 C.F.R. § 36.508(a).

25. The Property must be, but is not, in compliance with the ADA and ADAAG.

26. Plaintiff has attempted to, and has to the extent possible, accessed the Property in his capacity as a customer at the Property as well as an independent advocate for the disabled, but could not fully do so because of his disabilities resulting from the physical barriers to access, dangerous conditions and ADA violations that exist at the Property that preclude and/or limit his access to the Property and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein, including those barriers, conditions and ADA violations more specifically set forth in this Complaint.

27. Plaintiff intends to visit the Property again in the very near future as a customer and as an independent advocate for the disabled, in order to utilize all of the goods, services, facilities, privileges, advantages and/or accommodations commonly offered at the Property, but will be unable to fully do so because of his disability and the physical barriers to access, dangerous conditions and ADA violations that exist at the Property that preclude and/or limit his access to the Property and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein, including those barriers, conditions and ADA violations more specifically set forth in this Complaint.

28. Defendant, GREENRIDGE COMMONS, INC., has discriminated against Plaintiff (and others with disabilities) by denying his access to, and full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of the Property, as prohibited by, and by failing to remove architectural barriers as required by, 42 U.S.C. § 12182(b)(2)(A)(iv).

29. Defendant, GREENRIDGE COMMONS, INC., will continue to discriminate

against Plaintiff and others with disabilities unless and until Defendant, GREENRIDGE COMMONS, INC., is compelled to remove all physical barriers that exist at the Property, including those specifically set forth herein, and make the Property accessible to and usable by Plaintiff and other persons with disabilities.

30. A specific list of unlawful physical barriers, dangerous conditions and ADA violations which Plaintiff experienced and/or observed, or was made aware of prior to the filing of this Complaint, that precluded and/or limited Plaintiff's access to the Property and the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of the Property include, but are not limited to:

**ACCESSIBLE ELEMENTS:**

(i) Near Unit 11495, the ground surfaces of the accessible route leading from the public side walk has vertical rises in excess of ¼ (one quarter) inch in height, are not stable or slip resistant, have broken or unstable surfaces or otherwise fail to comply with Sections 302 and 303 of the 2010 ADAAG standards. This violation would make it dangerous and difficult for Plaintiff to access the units of the Property.

(ii) Near Unit 11495, due to the presence of an ice chest within 36 inches of the landing of the accessible curb ramp, the landing of the curb accessible ramp does not have 36 (thirty-six) inch clear space in violation of Section 406.4 of the 2010 ADAAG standards. This violation would make it difficult and dangerous for Plaintiff to access the Property.

(iii) Near Unit 11495, there is an accessible ramp closest to the public sidewalk, however, the access route to the accessible ramp is routinely blocked due to a

policy of having a marked parking space directly in front of the entrance to the ramp, as a result, the accessible ramp is not on an accessible route in violation of section when a vehicle is parked in the parking space directly in front of it. As a result and also due to the barrier to access identified in (ii) above, the Property lacks an accessible route from the public sidewalk to the accessible entrances of the Property. This violation would make it difficult for Plaintiff to access the units of the Property.

(iv) In front of Unit 11479, the access aisle to the accessible parking space is not level due to the presence of an accessible ramp in the access aisle in violation of Section 502.4 of the 2010 ADAAG standards. This violation would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property.

(v) In front of Unit 11479, the accessible curb ramp is improperly protruding into the access aisle of the accessible parking space in violation of Section 406.5 of the 2010 ADAAG Standards. This violation would make it difficult and dangerous for Plaintiff to exit/enter their vehicle.

(vi) In front of Unit 11479, there is a vertical rise at the base of the accessible ramp that is in excess of a ¼ of an inch, in violation of Sections 303.2 and 405.4 of the 2010 ADAAG standards. This violation would make it dangerous and difficult for Plaintiff to access public features of the Property.

(vii) In front of Unit 11479, due to a three inch gap there is a vertical rise at the top of the accessible ramp of about an inch, in violation of Sections 303.2 and 405.4 of

the 2010 ADAAG standards. This violation would make it dangerous and difficult for Plaintiff to access public features of the Property.

(viii) In front of Unit 11479, the accessible ramp side flares have a slope in excess of 1:10 in violation of Section 406.3 of the 2010 ADAAG standards. This violation would make it dangerous and difficult for Plaintiff to access the units of the Property.

(ix) In front of Unit 11479, there is a vertical rise along the accessible ramp that is in excess of a ¼ of an inch, in violation of Sections 303.2 and 405.4 of the 2010 ADAAG standards. This violation would make it dangerous and difficult for Plaintiff to access public features of the Property.

(x) In front of Unit 11479, due to a failure to enact a policy of proper maintenance, the accessible parking space sign is faded. As a result, the accessible parking space is missing a proper identification sign in violation of Section 502.6 of the 2010 ADAAG standards. This violation would make it difficult for Plaintiff to locate an accessible parking space.

(xi) In front of Unit 11479, the bottom edge of the sign identifying the accessible parking space is at a height below 60 inches from the floor in violation of Section 502.6 of the 2010 ADAAG standards. This violation would make it difficult for Plaintiff to locate an accessible parking space.

(xii) In front of Unit 11449, there is a vertical rise at the base of the accessible ramp of two inches, in violation of Sections 303.2 and 405.4 of the 2010 ADAAG standards. This violation would make it dangerous and difficult for Plaintiff to access public features of the Property.

(xiii) In front of Unit 11449, due to a three inch gap there is a vertical rise at the top of the accessible ramp in violation of Sections 303.2 and 405.4 of the 2010 ADAAG standards. This violation would make it dangerous and difficult for Plaintiff to access public features of the Property.

(xiv) In front of Unit 11449, the Property has an accessible ramp that lacks finished edges or edge protection and/or is otherwise in violation of Section 405.9 of the 2010 ADAAG standards. This violation would make it difficult for Plaintiff to access the units of the Property.

(xv) In front of King Liquor, the accessible parking space is not adequately marked and is in violation of Section 502.1 of the 2010 ADAAG standards. This violation would make it difficult for Plaintiff to locate an accessible parking space.

(xvi) In front of King Liquor, the access aisle to the accessible parking space is not level due to the presence of an accessible ramp in the access aisle in violation of Section 502.4 of the 2010 ADAAG standards. This violation would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property.

(xvii) In front of King Liquor, the accessible curb ramp is improperly protruding into the access aisle of the accessible parking space in violation of Section 406.5 of the 2010 ADAAG Standards. This violation would make it difficult and dangerous for Plaintiff to exit/enter their vehicle.

(xviii) In front of King Liquor, there is a vertical rise at the base of the accessible ramp of about an inch, in violation of Sections 303.2 and 405.4 of the 2010 ADAAG

standards. This violation would make it dangerous and difficult for Plaintiff to access public features of the Property.

(xix) In front of King Liquor, the bottom edge of the sign identifying one or more accessible parking spaces is at a height below 60 inches from the floor in violation of Section 502.6 of the 2010 ADAAG standards. This violation would make it difficult for Plaintiff to locate an accessible parking space**.**

(xx) In front of King Liquor, the Property has an accessible ramp leading from the accessible parking space to the accessible entrances with a slope exceeding 1:12 in violation of Section 405.2 of the 2010 ADAAG standards. This violation would make it dangerous and difficult for Plaintiff to access the units of the Property.

(xxi) In front of King Liquor, the accessible parking space is missing a proper identification sign in violation of Section 502.6 of the 2010 ADAAG standards. This violation would make it difficult for Plaintiff to locate an accessible parking space.

(xxii) In front of Unit 11405, the accessible parking space has an inadequate width and/or is not properly marked and are in violation of Section 502.2 of the 2010 ADAAG standards. This violation would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property.

(xxiii) In front of Unit 11405, the accessible parking space and associated access aisle have an extreme slope in excess of 1:10 in violation of Section 502.4 of the 2010 ADAAG standards and are not level. This violation would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property.

(xxiv) In front of Unit 11405, the accessible parking space is missing an identification sign in violation of Section 502.6 of the 2010 ADAAG standards. This violation would make it difficult for Plaintiff to locate an accessible parking space.

(xxv) In front of Unit 11405, the accessible parking space and associated access aisle has a cross slope exceeding 1:48 in violation of section 502.4 of the 2010 ADAAG standards.

(xxvi) In front of Unit 11405, the Property has an accessible ramp leading from the accessible parking space to the accessible entrances with a slope exceeding 1:10 in violation of Section 405.2 of the 2010 ADAAG standards. This violation would make it dangerous and difficult for Plaintiff to access the units of the Property.

(xxvii) In front of Unit 11405, the Property has an accessible ramp that lacks finished edges or edge protection and/or is otherwise in violation of Section 405.9 of the 2010 ADAAG standards. This violation would make it difficult for Plaintiff to access the units of the Property.

(xxviii)In front of Unit 11405, the Property has an accessible ramp that is not on an accessible route due to the barrier identified in (xxv) above as well as due to the fact that the parking space directly in front of the accessible ramp is not marked so as to discourage parking a vehicle in the accessible route leading to the accessible ramp, this is a violation of section 502.7 of the 2010 ADAAG Standards.

(xxix) The total number of accessible parking spaces is inadequate and is in violation of Section 208.2 of the 2010 ADAAG standards. Although the precise number of total parking spaces is difficult to count due to fading, there are approximately

250 total parking spaces on the Property which would require a minimum of seven accessible parking spaces, however, there are only four accessible parking spaces on the Property. This violation would make it difficult for Plaintiff to locate an accessible parking space.

(xxx) There are no van accessible parking spaces identified with signage in violation of sections 208.2.4 and 502.6 of the 2010 ADAAG Standards.

(xxxi) Defendant fails to adhere to a policy, practice and procedure to ensure that all facilities are readily accessible to and usable by disabled individuals.

31. The violations enumerated above may not be a complete list of the barriers, conditions or violations encountered by Plaintiff and/or which exist at the Property.

32. Plaintiff requires an inspection of the Property in order to determine all of the discriminatory conditions present at the Property in violation of the ADA.

33. The removal of the physical barriers, dangerous conditions and ADA violations alleged herein is readily achievable and can be accomplished and carried out without significant difficulty or expense. 42 U.S.C. § 12182(b)(2)(A)(iv); 42 U.S.C. § 12181(9); 28 C.F.R. § 36.304.

34. All of the violations alleged herein are readily achievable to modify to the Property into compliance with the ADA.

35. Upon information and good faith belief, the removal of the physical barriers and dangerous conditions present at the Property is readily achievable because the nature and cost of the modifications are relatively low.

36. Upon information and good faith belief, the removal of the physical barriers and dangerous conditions present at the Property is readily achievable because Defendant, GREENRIDGE COMMONS, INC., has the financial resources to make the necessary

modifications. According to the Property Appraiser, the Appraised value of the Property is $1,692,432.00.

37. The removal of the physical barriers and dangerous conditions present at the Property is also readily achievable because Defendant has available to it a $5,000.00 tax credit and up to a $15,000.00 tax deduction from the IRS for spending money on accessibility modifications.

38. Upon information and good faith belief, the Property has been altered since 2010.

39. In instances where the 2010 ADAAG standards do not apply, the 1991 ADAAG standards apply, and all of the alleged violations set forth herein can be modified to comply with the 1991 ADAAG standards.

40. Plaintiff is without adequate remedy at law, is suffering irreparable harm, and reasonably anticipates that he will continue to suffer irreparable harm unless and until Defendant, GREENRIDGE COMMONS, INC., is required to remove the physical barriers, dangerous conditions and ADA violations that exist at the Property, including those alleged herein.

41. Plaintiff's requested relief serves the public interest.

42. The benefit to Plaintiff and the public of the relief outweighs any resulting detriment to Defendant, GREENRIDGE COMMONS, INC.

43. Plaintiff's counsel is entitled to recover its reasonable attorney's fees and costs of litigation from Defendant, GREENRIDGE COMMONS, INC., pursuant to 42 U.S.C. §§ 12188 and 12205.

44. Pursuant to 42 U.S.C. § 12188(a), this Court is provided authority to grant injunctive relief to Plaintiff, including the issuance of an Order directing Defendant, GREENRIDGE COMMONS, INC., to modify the Property to the extent required by the ADA.

WHEREFORE, Plaintiff prays as follows:

(a) That the Court find Defendant, GREENRIDGE COMMONS, INC., in violation of the ADA and ADAAG;

(b) That the Court issue a permanent injunction enjoining Defendant, GREENRIDGE COMMONS, INC., from continuing their discriminatory practices;

(c) That the Court issue an Order requiring Defendant, GREENRIDGE COMMONS, INC., to (i) remove the physical barriers to access and (ii) alter the Property to make it readily accessible to and useable by individuals with disabilities to the extent required by the ADA;

(d) That the Court award Plaintiff his reasonable attorneys' fees, litigation expenses and costs; and

(e) That the Court grant such further relief as deemed just and equitable in light of the circumstances.

Dated: March 4, 2021

Respectfully submitted,

/s/ Douglas S. Schapiro
Douglas S. Schapiro, Esq.
Southern District of Texas ID No. 3182479
The Schapiro Law Group, P.L
7301-A W. Palmetto Park Rd., #100A
Boca Raton, FL 33433
Tel: (561) 807-7388
Email: schapiro@schapirolawgroup.com